# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

LAWRENCE HAMILTON;
GOKB-MISSISSIPPI, LLC; and
GOKB-MURFEESBORO, LLC,

    Plaintiffs,

v.

FRANCHOICE, INC. and
TOM SCARDA,

    Defendants.

Case No. 19-cv-1426 (MJD/ECW)

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Partial Dismissal

Pursuant to Rule 12(b)(6).  (Dkt. 12.)  This case has been referred to the undersigned

United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C.

§ 636 and Local Rule 72.1.  For the reasons discussed below, the Court recommends that

Defendants' Motion for Partial Dismissal Pursuant to Rule 12(b)(6) be granted in part

and denied in part.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The operative Complaint alleges as follows: Plaintiff Lawrence Hamilton

("Hamilton") is an individual resident and citizen of Tennessee, and resides in Bartlett,

Tennessee.  (Dkt. 1 ¶ 5.)  Hamilton formed Plaintiffs GoKB-Mississippi, LLC, a limited

liability company formed under the laws of Mississippi with a principal place of business

in Mississippi; and GoKB-Murfeesboro, LLC, a limited liability company formed under

the laws of Tennessee with a principal place of business in Tennessee, as the vehicles for

operating and acquiring franchises from non-party ILKB, LLC ("ILKB"), the franchisor

of "iLoveKickboxing.com" franchises, which are fitness facilities dedicated to

kickboxing, a form of physical fitness.  (*Id.* ¶¶ 3-5.)  At all relevant times, ILKB was a

New York limited liability company with its headquarters in New York State.  (*Id.* ¶ 8.)

ILKB offered and sold franchises only in and from New York State.  (*Id.*)

Hamilton became interested in purchasing a franchise in 2016.  (*Id.* ¶ 11.)  In

September 2016, Hamilton had a call with Defendant Tom Scarda ("Scarda"), a franchise

broker with Defendant FranChoice Inc. ("FCI").  (*Id.* ¶ 12.)  FCI is a corporation formed

under the laws of Minnesota, with its principal place of business in Eden Prairie,

Minnesota.  (*Id.* ¶ 6.)  It is a franchise broker that assists prospective franchisees in

identifying, investigating, selecting and acquiring franchises.  (*Id.*)  Scarda is an

individual residing in Wantagh, New York and is a citizen of that state.  (*Id.* ¶ 7.)  During

Hamilton's September 2016 call with Scarda, Scarda represented that FCI conducts due

diligence on the franchises they represent and that they are confident with the options

they present.  (*Id.* ¶ 12.)

Through its website (https://www.franchoice.com/), FCI held itself out as directing

prospective franchisees to "high quality franchise businesses that match your

requirements" and that it would match "entrepreneurs like you with the perfect franchise

business."  (*Id.* ¶ 13.)  FCI stressed that Plaintiffs could "avoid the confusion of

researching" franchise opportunities and could focus on those franchises that FCI had

"selected . . . as franchise businesses matching [his] requirements."  (*Id.*)  FCI further

represented that "[t]hey will be by your side coaching you and making sure you are

getting the information you need in order to make the best decision for you." (*Id.*)

In October 2016, Hamilton spoke with Scarda about various franchise opportunities. (*Id.* ¶ 14.) Scarda presented Hamilton with five franchise concepts, including ILKB. (*Id.*) Scarda also made a number of representations to Hamilton about the ILKB franchise opportunity including that: ILKB does all marketing for franchisees and brings clients to franchisees; it would cost $250,000 to $300,000 to open a franchise; ILKB has a "proven system for operation"; ILKB has franchisees "breaking even in less than 90 days"; and an ILKB studio could "conservatively" expect to make $100,000 or more per year in profits. (*Id.*)

In reliance on the representations of FCI and Scarda, and their solicitation of Hamilton to purchase a franchise from ILKB, Hamilton decided to purchase an ILKB franchise, which was accepted by ILKB at its headquarters in New York State. (*Id.* ¶¶ 15-16.) Hamilton entered into a franchise agreement for a location in Southaven, Mississippi with ILKB on or about December 28, 2016 and entered into a multi-unit development agreement with ILKB that gave him the rights to develop four additional ILKB studios on or around January 10, 2017, for which he paid a fee of $145,000. (*Id.* ¶ 16.) In further reliance, Hamilton then undertook substantial lease obligations and opened an ILKB franchise location in Southaven, Mississippi on November 16, 2017 and later opened an additional location in Murfeesboro, Tennessee on or around June 11, 2018. (*Id.* ¶ 17.)

After opening the business, Plaintiffs learned that the representations that FCI and Scarda had made to them relating to ILKB franchises were untrue, including:

representations related to marketing; the money generated by ILKB franchises; the profitability of franchisees; and the costs needed to open a franchise.  (*Id.* ¶¶ 18-19.)

Defendants also failed to do or disclose their due diligence by not discovering or communicating to Plaintiffs the existence of lawsuits and a bankruptcy related to ILKB's founder and its affiliates.  (*Id.* ¶¶ 22-23.)  Plaintiffs assert that had they known of this information they would not have purchased any franchises from ILKB.  (*Id.* ¶ 23.)

Plaintiffs assert claims for relief against Defendants for their alleged violations of the New York Franchise Sales Act, N.Y. Gen. Bus. L. 680 *et seq.*; the Mississippi Franchise Law, Miss. Code § 75-24-55; the Tennessee Consumer Protection Act, Tenn. Stat. § 47-18-101 *et seq.*; and the Minnesota Franchise Act, Minn. Stat. §80C.01 *et seq.* Plaintiffs also assert claims against Defendants for common law fraud, fraud in the omission, and negligent misrepresentation.

Defendants move to dismiss Plaintiffs' New York Franchise Sales Act ("NYFSA"), Mississippi Franchise Law ("MFL"), and Minnesota Franchise Act ("MFA") claims.

## II.    LEGAL STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true.  *See Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under

Rule 12(b)(6), litigants must properly plead their claims under Federal Rule of Civil Procedure 8 and meet the principles articulated by the United States Supreme Court in *Iqbal* and *Twombly*.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Following *Twombly* and consistent with *Iqbal*, the Eighth Circuit explained:

> While a plaintiff need not set forth "detailed factual allegations," *Twombly*, 127 S. Ct. at 1964, or "specific facts" that describe the evidence to be presented, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam), the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. *Twombly*, 127 S. Ct. at 1965 n. 3. A district court, therefore, is not required "to divine the litigant's intent and create claims that are not clearly raised," *Bediako*, 354 F.3d at 840, and it need not "conjure up unpled allegations" to save a complaint. *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).

If matters outside the pleadings "are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). While matters "outside the pleadings" may not be considered in deciding a Rule 12 motion to dismiss, documents "necessarily embraced by the complaint are not matters outside the pleading." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). Thus, while courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned, without converting the motion into one for summary judgment. *Id.*; *see also Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).

## III.    ANALYSIS

**A.    Plaintiffs' Claim Under the New York Franchise Sales Act**

According to Plaintiffs, FCI and Scarda violated the NYFSA by making false representations and omissions to Hamilton for the purpose of inducing him to purchase an ILKB franchise.  (Dkt. 1 ¶ 30.)  Defendants argue that the NYFSA claim fails as a matter of law because they are not franchisors, and because they did not offer or sell any franchise to Plaintiffs, given that it was non-party ILKB who offered and sold the franchise at issue and the Complaint does not allege that Defendants offered or sold a franchise to Plaintiffs on behalf of ILKB.  (Dkt. 14 at 8-10.)

Under New York law, "[t]he primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature." N.Y. Stat. Law § 92.  When the language of a statute is plain, courts are required to follow its mandates.  *See Kimmel v. State*, 29 N.Y.3d 386, 392, 80 N.E.3d 370, 373 (2017) (concluding that courts under New York law should look "first to the plain language of the statute[ ] as the best evidence of legislative intent") (quotation marks and citation omitted); *Better World Real Estate Grp. v. New York City Dep't of Fin.*, 122 A.D.3d 27, 35, 992 N.Y.S.2d 247 (2014) (citations omitted) ("[C]ourts should construe clear and unambiguous statutory language as to give effect to the plain meaning of the words used.").  The NYFSA was enacted specifically to prevent, combat, and protect the franchisee from rampant franchise sales fraud, it is remedial in nature, and therefore, is to be liberally construed.  *See A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc.*, 162 Misc. 2d 941, 951, 618 N.Y.S.2d 155, 161 (Sup. Ct. 1994), *aff'd*, 214

A.D.2d 473, 625 N.Y.S.2d 904 (1995), *aff'd as modified*, 87 N.Y.2d 574, 663 N.E.2d 890

(1996) (citations omitted).  In that interpretative context, courts are obliged to

"'harmonize the various provisions' of a statute to achieve its legislative purpose." *Id.*

(citations omitted).

The NYFSA provides that the following conduct is unlawful:

2. It is unlawful **for a person, in connection with** the **offer,** sale **or purchase of any franchise**, to directly or indirectly:

(a) Employ any device, scheme, or artifice to defraud.

(b) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.  It is an affirmative defense to one accused of omitting to state such a material fact that said omission was not an intentional act.

(c) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

N.Y. Gen. Bus. Law § 687(2) (emphases added).  "A **person who offers or sells** a

franchise in violation of . . . [§ 687] is liable to the person purchasing the franchise for

damages and, if such violation as willful and material, for rescission, with interest at six

percent per year from the date of purchase, and reasonable attorney fees and court costs."

N.Y. Gen. Bus. Law § 691(1) (emphasis added).

### 1.    Whether Defendants Are "Persons" Under the NYFSA

While Defendants' arguments turn on the argument that it was ILKB as the

franchisor who offered and sold the franchises at issue, that argument ignores the plain

meaning of the NYFSA of who can be held liable under the Act.  Even assuming that

ILKB is the franchisor, liability under the NYFSA is not limited to franchisors; rather it extends broadly to "person[s]," which is defined under the NYFSA as follows:

> "Person" means an individual, corporation, partnership, joint venture, association, company, trust, unincorporated organization or other entity and shall include any other person that has a substantial interest in or effectively controls such person, as well as the individual officers, directors, general partners, trustees or other individuals in control of the activities of each such person.

N.Y. Gen. Bus. Law § 681(13).  Indeed, Defendants, notwithstanding their contention that they did not offer to sell or did not in fact sell a franchise as required for liability under the NYFSA, do not contest that they are persons for the purposes of § 681(13).

### 2.   Whether Defendants' Alleged Conduct Amounts to an "Offer" or an "Offer to Sell" Under the NYFSA.

Plaintiffs argue that Defendants' conduct amounts to a solicitation to them to buy an ILKB franchise.  (Dkt. 18 at 6-7, 9-10.)  Defendants' assertion that no liability can attach to them under the NYFSA, because there are no allegations in the Complaint that they sold or offered to sell an ILKB franchise to Plaintiffs, relies on an overly narrow construction of the term "offer" under the NYFSA.  The NYFSA defines "offer" as follows:

> "Offer" or "offer to sell" includes **any attempt to offer to dispose of, or solicitation of an offer to buy, a franchise or interest in a franchise for value**.  The terms "offer" and "offer to sell" do not include the renewal or extension of an existing franchise where there is no interruption in the operation of the franchised business by the franchisee.

N.Y. Gen. Bus. Law § 681(11) (emphases added).

The word "solicitation" is not defined within the NYFSA.  Under New York law, courts "are to construe words of ordinary import with their usual and commonly

understood meaning, and in that connection have regarded dictionary definitions as 'useful guideposts' in determining the meaning of a word or phrase." *Rosner v. Metro. Prop. & Liab. Ins. Co.*, 96 N.Y.2d 475, 479-80, 729 N.Y.S.2d 658, 660 (2001) (citation omitted). The plain meaning of the word "solicitation" is found in the dictionary; it in relevant part, means the "act or an instance of requesting or seeking to obtain something" or "[a]n attempt or effort to gain business." *Solicitation, Black's Law Dictionary* (11th ed. 2019); *see generally, Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 223 (1992) ("'Solicitation,' commonly understood, means 'asking' for, or 'enticing' to, something[.]") (citing *Black's Law Dictionary* (6th ed. 1990)).

Here, the Complaint alleges that FCI held itself out as directing prospective franchisees to high quality franchise businesses, and Scarda allegedly made a number of representations regarding favorable reasons why Plaintiffs should purchase an ILKB franchise. (Dkt. 1 ¶¶ 13-14). Given the NYFSA's broad language under § 687(2) prohibiting fraud "**in connection with** the offer, sale or purchase of any franchise" and the statute's broad remedial purpose, the Court finds that Plaintiffs have plausibly alleged that FCI solicited from Plaintiffs an offer to buy an ILKB franchise, as evidenced by Scarda's alleged representations set forth above, made to entice an offer from Plaintiffs for an ILKB franchise. While Defendants argue that none of these solicitations amounted to an offer and that there are no plausible allegations of Defendants making a solicitation (Dkt. 14 at 11-12), this argument ignores the fact that the definition of an "offer" includes solicitation by Scarda of an offer from Plaintiffs to purchase a franchise, which is adequately alleged in the Complaint as evidenced by the alleged numerous positive

statements made by Scarda regarding ILKB.  *See Reed v. Oakley*, 172 Misc. 2d 655, 658,

661 N.Y.S.2d 757, 759 (Sup. Ct. 1996), *aff'd*, 240 A.D.2d 991, 659 N.Y.S.2d 820 (1997)

("The conduct covered by the definition is not limited to the act of signing on the dotted

line after the solicitation is made.  Here, the solicitation and other negotiations were made

prior to approval, and, by definition, amounted to an offer to sell prior to approval.").

Simply put, Plaintiffs have adequately alleged for purposes of the NYFSA that Scarda's

communications, taken together, were seeking to obtain and entice from Plaintiffs an

offer to purchase an ILKB franchise.

Again, Defendants' arguments focus on the fact that alleging that a franchise

broker unrelated to a franchisor is not enough to establish liability under the NYFSA and

that the Complaint does not allege that they are in the business of selling franchises or

that they sold a franchise in this case.  (Dkt. 14 at 8-9.)  However, the NYFSA separately

defines "franchisor" as "a person who grants a franchise."  N.Y. Gen. Bus. Law § 681(5).

Had the New York Legislature only meant for liability to attach to franchisors, they

simply could have defined a "Person" as a Franchisor consistent with § 681(5).  Instead,

as set forth above, they defined it expansively.  Moreover, while the Court agrees that

there is no dispute that the ultimate transaction involving the sale of the franchise was

between ILKB and Plaintiffs, the word "solicit" does not confine itself to a franchisor and

the ultimate act of the offer and acceptance.  *See generally*, *Reed*, 172 Misc. 2d at 658

("The conduct covered by the definition is not limited to the act of signing on the dotted

line after the solicitation is made."); *Pinter v. Dahl*, 486 U.S. 622, 643 (1988)[1] (finding

with respect to the Securities Act that "[u]nder these definitions, the range of persons

potentially liable under § 12(1) is not limited to persons who pass title. The inclusion of

the phrase 'solicitation of an offer to buy' within the definition of 'offer' brings an

individual who engages in solicitation, an activity not inherently confined to the actual

owner, within the scope of § 12.").

Defendants further argue that the remedies section of the NYFSA makes it clear

that the NYFSA applies to franchisors, not Defendants. (Dkt. 14 at 13.) The remedies

provision of the NYFSA provides:

> A person who offers or sells a franchise in violation of section six hundred
> eighty-three, six hundred eighty-four or six hundred eighty-seven of this
> article **is liable to the person purchasing the franchise <u>for damages and</u>,
> if such violation as willful and material, for <u>rescission</u>**, with interest at six
> percent per year from the date of purchase, and reasonable attorney fees and
> court costs.

N.Y. Gen. Bus. Law § 691(1) (emphases added). Defendants argue that the language of

Section 691 undercuts Plaintiffs' arguments that they can be held liable under the

---

[1]     The Supreme Court went on to explain that:

> [B]rokers and other solicitors are well positioned to control the flow of
> information to a potential purchaser, and, in fact, such persons are the
> participants in the selling transaction who most often disseminate material
> information to investors. Thus, solicitation is the stage at which an investor
> is most likely to be injured, that is, by being persuaded to purchase securities
> without full and fair information.

*Id.* at 646-47. This is similar to the scenario alleged here, where "brokers" (Dkt. 1 ¶¶ 6, 12) such as Defendants are poised to control the information disseminated to prospective franchisees and it is at this solicitation stage where prospective franchisees are likely to be persuaded to purchase an ILKB franchise, especially where FCI's agents are allegedly acting as an independent source of information.

NYFSA because the remedy of rescission within this provision can only be granted through ILKB, the franchisor.  (Dkt. 14 at 13.)

The fact that the remedies under the NYFSA include rescission along with damages as possible remedies does not mean that the NYFSA can only apply to franchisors or that a person cannot seek one remedy without seeking the other.  Such an interpretation is contrary to the clear language of the statute.  By way of example, there is no dispute that an employee of a "person" as defined under the NYFSA can be held liable under the NYFSA.  *See* N.Y. Gen. Bus. Law § 691(3) (employees can be held liable to the same extent as an employer).  However, under Defendants' argument, such an employee could not be held liable because obviously the employee, even if they are an employee of a franchisor, does not have the ability to effect a rescission.  Simply put, Defendants' interpretation would rewrite the definition of "person" under the act to only mean a franchisor.  Given the expansive scope as to what includes a "person" and "offer" under the plain language of the NYFSA, the fact that the statute was "enacted specifically to prevent, combat and protect the franchisee from rampant franchise sales fraud," *A.J. Temple Marble & Tile*, 162 Misc. 2d at 951, and the need to harmonize the various provisions of the NYFSA to effectuate this purpose, *id.*, the Court finds that the intent of the New York Legislature was not only to punish franchisors but to ensure that brokers, such as FCI and their agents, are held accountable for the resulting harm to franchisees from their alleged fraudulent statements that franchisees acted in reliance on when deciding to purchase a franchise, even if the ultimate purchase is from a different party.

**3.      Conclusion**

For all of the reasons set forth above, Plaintiffs have adequately alleged a plausible claim against Defendants under the NYFSA and the Motion to Dismiss this claim should be denied.

**B.      Plaintiffs' Claim under the Minnesota Franchise Act**

According to Defendants, to be covered by the MFA, the sale or offer to sell had to be made in Minnesota.  (Dkt. 14 at 15.)  Defendants, relying upon Minn. Stat. § 80C.19, argue that the MFA cannot apply to Plaintiffs' claims because Plaintiffs have only identified a franchise unit located in Tennessee, not in Minnesota, and Scarda is alleged to reside in New York and only communicated to Plaintiffs (non-Minnesota residents) via the telephone.  (*Id.* at 15-16 (citing Dkt. 1 ¶¶ 7, 12, 14, 17).)  Plaintiffs counter with agency and respondeat superior theories, asserting that because Scarda, a New York resident,[2] is the agent of a Minnesota corporation,[3] the offer originated from Minnesota for the purposes of the MFA.  (Dkt. 18 at 15-18.)

---

[2]      Plaintiffs do not plausibly allege or argue that Scarda himself, outside of agency theory, took any actions aimed towards or from Minnesota relating to the present claims.

[3]      Plaintiffs also point to the allegations in the Complaint (Dkt. 1 ¶¶ 36, 41) where they assert that FCI and Scarda solicited Plaintiffs within Minnesota.  (Dkt. 18 at 15.) However, these conclusory assertions are insufficient, as merely being a formulaic recitation of a requirement for a viable MFA cause of action.  *See Iqbal*, 556 U.S. at 678. It is clear by the specific facts alleged in the Complaint that it was Scarda as an agent of FCI who made the representation at issue to induce an offer from Plaintiffs to ILKB.

Under Minnesota law:

No person may offer[4] or sell a franchise **in this state** by means of any written or oral communication which includes an untrue statement of a material fact or which omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

Minn. Stat. § 80C.13, subd. 2 (emphasis added).

With respect to liability under § 80C.13, the MFA defines an offer to sell or a purchase of a franchise "in this state" as follows:

Subd. 1.  Applicable sales and offers to sell or purchase.  The provisions of sections 80C.01 to 80C.22 concerning sales and offers to sell shall apply when a sale or offer to sell is made in this state; when an offer to purchase is made and accepted in this state; or when the franchise is to be located in this state.

Subd. 2.  Offer to sell or purchase made in state.  For the purpose of sections 80C.01 to 80C.22, an offer to sell or to purchase is made in this state, whether or not either party is then present in this state, when the offer originates from this state or is directed by the offeror to this state and received by the offeree in this state.

Subd. 3.  Offer to purchase or sell accepted in state.  For the purpose of this section, an offer to purchase or to sell is accepted in this state when acceptance is communicated to the offeror in this state, and has not previously been communicated to the offeror, orally or in writing, outside this state; and acceptance is communicated to the offeror in this state, whether or not either party is then present in this state, when the offeree directs it to the offeror in this state reasonably believing the offeror to be in this state and it is received by the offeror in this state.

Subd. 4.  Offer to sell or purchase not made in state.  An offer to sell or to purchase is not made in this state when the publisher circulates or there is circulated in the publisher's behalf in this state any bona fide newspaper or other publication of general, regular and paid circulation which is not

---

[4]    Similar to the NYFSA, under the MFA, "offer" and "offer to sell" "includes every attempt to offer to dispose of, and **every solicitation of an offer to buy**, a franchise or interest in a franchise for value."  Minn. Stat. § 80C.01, subd. 16 (emphasis added).

published in this state, or when a radio or television program originating outside this state is received in this state.

Minn. Stat. § 80C.19.

The MFA "was adopted in 1973 as remedial legislation designed to protect potential franchisees within Minnesota from unfair contracts and other prevalent and previously unregulated abuses in a growing national franchise industry." *Clapp v. Peterson*, 327 N.W.2d 585, 586 (Minn. 1982) (citation omitted); *see also Martin Investors, Inc. v. Vander Bie*, 269 N.W.2d 868, 872 (Minn. 1978). When the MFA was introduced as a bill in 1973, it was described as a "bill to give the commissioner of securities some control over the franchising business in the state of Minnesota." *In re Ne. Exp. Reg'l Airlines, Inc.*, 228 B.R. 53, 59 (Bankr. D. Me. 1998) (quoting Hearing on the Minnesota Franchise Act Before the Minnesota Senate, 68th Legis., Reg. Sess. (Minn. 1973) (statement by unidentified senator)). *Clapp*, relied upon by Defendants, dealt with a technical violation of the MFA requiring a person offering or selling a franchise within the state to register with the Commissioner of Securities a proposed public offering statement making full disclosure of all facts required by statute or rules of the commissioner. 327 N.W.2d at 586 (citing Minn. Stat. §§ 80C.02 (1980), 80C.04 (1980) and 80C.06 (1980)). It rendered no analysis in its decision as to whether the defendant was offering or selling a franchise within the state. *Martin Investors*, *supra*, only involved a Minnesota-based franchisee where the defendant published advertisements for consultants in at least two newspapers published within Minnesota; the agent of the defendant discussed the proposed consultant arrangement in a long-distance telephone call with an agent of the plaintiff, who was within Minnesota, and the defendant CCC

16

then mailed a sample copy of its standard consultant agreement to him in Minnesota. *See*

*Martin Investors*, 269 N.W.2d at 873. Based on these facts, the court concluded:

> Through these activities, CCC directly induced a Minnesota resident to enter
> a contractual relationship upon essentially all of the terms proposed in the
> sample consultant agreement forwarded to Faye but without the benefit of
> the full disclosure provided by the registration requirements of the Franchises
> Act. This is precisely the kind of activity that our act was designed to
> regulate and that must be subjected to the requirements of registration and
> full disclosure if the protective purposes of the act are to be realized.

*Id.* The Minnesota Supreme Court went on to reject the notion that an offer made in

Minnesota needed to be shown in the "strictest sense of contract law" as requiring too

narrow a reading of the MFA as a remedial statute. *Id.* at 873-74. Recently the

Minnesota Court of Appeals noted that while the *Martin Investors* court "recognized the

legislature's intent in adopting the MFA was to protect franchisees in Minnesota" it did

"not address . . . the scope of the MFA."[5] *Cambria Co. LLC v. M&M Creative*

*Laminants Inc.*, No. A18-1978, 2019 WL 3543602, at *2 (Minn. Ct. App. Aug. 5, 2019).

One court in this district has characterized territorial applicability of the MFA as

"murky." *Wave Form Sys., Inc. v. AMS Sales Corp.*, 73 F. Supp. 3d 1052, 1062 (D.

Minn. 2014). Indeed, courts examining the issue have reached inconsistent results. For

example, in *Healy v. Carlson Travel Network Associates, Inc.*, 227 F. Supp. 2d 1080 (D.

Minn. 2002), the court rejected an argument similar to the one being presented by

Plaintiffs:

---

[5]     In *Cambria*, the Court considered, but ultimately declined, a request to certify the
following question: "May a non-Minnesota resident claiming to be a franchisee invoke
the provisions of the Minnesota Franchise Act where its only connection with Minnesota
is the location of the purported franchisor?" 2019 WL 3543602, at *2.

> Healy urges that the statute applies because the offer to sell the franchise came from an agent of Carlson, a Minnesota corporation. No authority is cited for the proposition that the MFA applies merely because the franchisor is a Minnesota corporation. Healy concedes that Crider, the Carlson agent he contacted for information and with whom he negotiated the sale, was based in Florida. The newspaper advertisement for Carlson franchise opportunities that Healy responded to, was placed in the Chicago Tribune by Crider's office in St. Petersburg, Florida. The Agreement was presented to and signed by Healy in Illinois. Healy has not demonstrated that the MFA applies to his case.

*Id.* at 1088; *see also Klosek v. Am. Express Co.*, No. CIV. 08-426 JNE/JJG, 2008 WL 4057534, at *21 (D. Minn. Aug. 26, 2008), *aff'd*, 370 F. App'x 761 (8th Cir. 2010) ("As the statute indicates, the geographic limits do not apply to the entire MFA, but only to 'the provisions concerning sales and offers to sell.'") (quoting Minn. Stat. § 80C.19, subd. 1) (cleaned up).[6]

At least one court has held that "even where a party to a 'franchise agreement' is a Minnesota corporation, the agreement is not within the purview of the MFA if the franchisee is not located in and does not operate in Minnesota." *Johnson Bros. Liquor Co. v. Bacardi U.S.A., Inc.*, 830 F. Supp. 2d 697, 703 (D. Minn. 2011) (citing *Hockey Enters., Inc. v. Total Hockey Worldwide, LLC*, 762 F. Supp. 2d 1138, 1146 (D. Minn. 2011)). The basis of the court's holding was that the "MFA applies only to 'franchise

---

[6]    The Court in *Klosek*, distinguished the facts in that case from those in *Healey* as follows:

> And though Ameriprise urges otherwise, it appears that *Healy* chiefly involved misrepresentations in the sale of a franchise, and not other complaints under the MFA. *See id.* at 1083-84. Because the current litigation does not involve a sale or offer to sell, it is distinguishable from *Healy*.

2008 WL 4057534, at *21.

18

agreements' within the purview of Minnesota law.  Minnesota cannot regulate 'franchise agreements' that are formed and preformed in other states."  *Id.* (citing *In re St. Paul & K.C. Grain Co.*, 89 Minn. 98, 94 N.W. 218, 225 (Minn. 1903) (noting that "general rule" is that state statutes apply only to territory of state that enacted the statute)).

In *Candleman Corp. v. Farrow*, No. 9802463, Bus. Franchise Guide (CCH) § 11,635, 1999 WL 35768614 (D. Minn. Feb. 1, 1999), the court found that the MFA applied to the facts in that case because (1) the franchisor's offer to sell the franchise originated from the franchisor's Minnesota office; (2) the acceptance of the offer was received by the franchisor in Minnesota; and (3) the franchise agreement's choice of law provision provided for Minnesota law.  *Id.*

In *Wave Form*, *supra*, the plaintiff, an Oregon company, asserted that the MFA applied to its agreement with a Minnesota manufacturer, because the manufacturer's offer to sell originated from Minnesota and acceptance of that offer was received by AMS in Minnesota.  73 F. Supp. 3d at 1059.  The plaintiff argued that the "originated from" language was met when the manufacturer transmitted the agreement from its office in Minnesota to Wave Form in Oregon, and the "received by the offeree in this state" language was satisfied when Wave Form executed and subsequently returned the agreement to AMS in Minnesota for its signature.  *Id.* at 1060.  In an order on a motion for a preliminary injunction, the court found that "Wave Form's position, while it is seemingly a fair construction of the statutory language, fails to account for the MFA's territorial application that was intended by the legislature," and reaffirmed that the "legislative intent behind the passage of the [Franchise Act] was to protect Minnesota

19

franchisees located within Minnesota." *Id.* (citing *Martin Investors*, 269 N.W.2d at 872).

Ultimately, the Court held as follows with respect to whether the plaintiff was likely to

prevail on its MFA claim:

> At present, whether Wave Form will likely succeed on the merits of its claim
> is uncertain. The entirety of Wave Form's position rests on the applicability
> of the MFA. While a construction of the language of the statute does support
> Wave Form's position, the Minnesota nexus with the factual predicate is very
> minimal. Other than receiving an offer transmitted from Minnesota and then
> remitting acceptance back to Minnesota, Wave Form has had no contact with
> Minnesota. Wave Form has never had a single sale in this state nor does it
> have any physical presence here. While Wave Form does conduct business
> in states outside of Oregon, it is undisputed that Minnesota is not one of them.
> To construe the MFA broadly enough to apply here given the facts currently
> of record in this case is a stretch.

*Wave Form*, 73 F. Supp. 3d at 1061.

This Court's decision must be informed foremost by the plain language of the

MFA. *See Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). Here,

the pertinent portion of § 80C.19, dealing with offers made in this state provides:

> Offer to sell or purchase made in state. For the purpose of sections 80C.01
> to 80C.22, an offer to sell or to purchase is made in this state, whether or not
> either party is then present in this state, **when the offer originates from this
> state** or is directed by the offeror to this state and received by the offeree in
> this state.

Minn. Stat. § 80C.19, subd. 2 (emphasis added). There is nothing in the language of the

statute suggesting that the MFA cannot apply to a foreign franchisee when the offer, in

this case a solicitation, "originates" from Minnesota. The Court in *Wave Form* conceded

that this was "seemingly a fair construction of the statutory language," 73 F. Supp. 3d at

1060, before ignoring that same language and concluding that the legislative intent

behind the passage of the MFA was to protect Minnesota franchisees located within

Minnesota. There is nothing in the MFA remotely carving out such an exception. Indeed, in 1981, the legislature added an exemption to the MFA's registration requirements under Minn. Stat. § 80C.02, exempting any "offer or sale of a franchise to a resident of a foreign state, territory, or country who is neither domiciled in this state nor actually present in this state, if the franchise business is not to be operated wholly or partly in this state, and if the sale of this franchise is not in violation of any law of the foreign state, territory, or county concerned." Minn. Stat. § 80C.03(h) (1981 Supp.). Had the legislature desired a similar carve-out regarding the prohibitions set forth in Minn. Stat. § 80C.13 for franchises located outside of the state of Minnesota it could have included a similar exemption within Section 80C.03. If the statutory language were construed as urged by Defendants, Minnesota would be without authority to enforce its franchise laws against a business located physically within Minnesota, but which directed its fraudulent efforts towards non-residents **from** within Minnesota. It is unlikely that the legislature intended such a result. Instead, the focus, based on the plain language of the statute is on the nexus of the conduct—whether the solicitations at issue originated from Minnesota. *See Candleman*, Bus. Franchise Guide (CCH) § 11,635, 1999 WL 35768614. Such an interpretation is most consistent with the language of the MFA and the general rule that Minnesota statutes are to apply to conduct within its borders.

However, the Court cannot interpret the MFA so broadly that it will apply to a Minnesota company, such as FCI, even through a theory of respondeat superior or agency as argued by Plaintiffs (Dkt. 18 at 15-18), if none of the illegal acts complained of

originated from Minnesota. *See Healy*, 227 F. Supp. 2d at 1088. The Court will not rewrite the MFA to encompass such acts, regardless of its remedial nature.

The only allegations in the Complaint regarding Scarda are that he is an agent of FCI and that he resided and is a citizen of New York. (Dkt. 1 ¶ 7.) There are no factual allegations in the Complaint suggesting that the operative solicitations at issue originated from Minnesota, including that Scarda made the representations while in Minnesota. Under the doctrine of respondeat superior, "'the act of an agent within the scope of his agency is the act of his principal. The principal is liable because the law attributes to him the act of his agent, with the result that both are liable jointly and severally to the person injured by the wrongful act.'" *D.W. v. Radisson Plaza Hotel Rochester*, 958 F. Supp. 1368, 1380 (D. Minn. 1997) (quoting *Melady v. South St. Paul Live Stock Exch.*, 142 Minn. 194, 171 N.W. 806, 807 (1919)) (cleaned up). Even assuming that these doctrines apply to the MFA, they only impute the acts of Scarda back to FCI in Minnesota for purposes of liability and do not speak to what matters for the purposes of the MFA— whether the malfeasance at issue originated from Minnesota. It would be a closer question if the Complaint alleged that someone from within FCI in Minnesota directed Scarda to make the specific alleged solicitations to Plaintiffs. However, that is not the case here.[7]

---

[7] Plaintiffs asked that, if the Court finds the Complaint does not state a claim under the MFA, the Court give Plaintiffs leave to amend on the basis of an Independent Consultant Agreement between FCI and its consultants regarding certain generalized procedures and requirements. (Dkt. 18 at 1, 15.) However, even if there is such an agreement, it does not mean that the representations originated in Minnesota, as it does not change the fact that it is not alleged that Scarda himself made the operative allegedly fraudulent solicitations at issue from within Minnesota.

For all of these reasons, the Court finds that Plaintiffs' MFA claim should be dismissed.

**C.      Mississippi Franchise Law**

According to Defendants, Plaintiffs' claim under Mississippi Code Section 75-24-55 should be dismissed because they are not "franchise companies" under § 75-24-55 and are not alleged to be franchise companies in the Complaint.  (Dkt. 14 at 14.)  In their opposition, Plaintiffs argue that while a different section of the MFL uses the phrase "person who had granted a franchise" (Miss. Code § 75-24-53), the portion it relies upon, Section 75-24-55, is broader using the phrase "franchise companies," which it claims includes FCI because it offers franchise services as alleged in the Complaint.  (Dkt. 18 at 11-13.)  Plaintiffs also argue that a narrow reading of the MFL would allow an unscrupulous franchisor hiring an outside franchise broker to avoid statutory protections provided to franchisees under the law, which the Mississippi Legislature could not have intended.  (*Id.* at 12.)

Section 75-24-55, which is entitled "Representations by Franchisers" provides:

> **Franchise companies** shall not represent directly or by implication that prospective participants may or will earn any stated gross or net amount, or represent in any manner, the past earnings of participants unless in fact the past earnings or predicted gross or net amount represented are those of a substantial number of participants in the community or geographical area in which the representations are made and accurately reflect the average earnings of those participants under circumstances similar to those of the participant or prospective participant to whom the representation is made.

Miss. Code. § 75-24-55 (emphasis added).  While the title of the statute "Representations by Franchisers" is not considered to be part of the statute, the title can serve as an interpretive tool, which supports a finding that the prohibitions under the MFL only

applicable to franchisors. *See Volvo Fin. Servs. v. Williamson*, 910 F.3d 208, 213 (5th

Cir. 2018) (citing *Lewis v. Simpson*, 176 Miss. 123, 167 So. 780, 781 (Miss. 1936)).

Further, while "Franchise companies" is not defined, the term "franchise" is defined as

follows:

> "Franchise" means a written arrangement for a definite or indefinite period,
> in which a person for a consideration grants to another person a license to
> use a trade name, trademark, service mark, or related characteristic, and in
> which there is a community of interest in the marketing of goods or services
> at wholesale, retail, by lease, agreement or otherwise; except that, the term
> "franchise" shall not apply to persons engaged in sales from warehouses or
> like places of storage, leased departments of retail stores, or places of original
> manufacture. . . .

Miss. Code. § 75-24-51(c).  Given the definition of term "franchise", as defined above,

the Court reads the plain language of the phrase "franchise company" to mean a company

in the business of entering into "a written arrangement for a definite or indefinite period,

in which a person for a consideration grants to another person a license to use a trade

name, trademark, service mark, or related characteristic, and in which there is a

community of interest in the marketing of goods or services at wholesale, retail, by lease,

agreement or otherwise . . . ." *Id.*  That cannot include FCI or Scarda as alleged, given

they are not to have alleged to have entered into such an arrangement with Plaintiffs.

Had the Mississippi Legislature intended to broaden the scope of § 75-24-55 beyond

franchisors, it could have drafted the law to read "[persons] shall not represent directly or

by implication that prospective participants may or will earn any stated gross or net

amount, or represent in any manner."  Indeed, the MFL contains a definition for

"person"[8] that is similar to that contained with the NYFSA and the MFA.

As stated above, Plaintiffs complain that such a narrow reading of the MFL cannot

be what the Mississippi Legislature intended, as such a result as it would render the entire

statute toothless.  (Dkt. 18 at 12).  However, it is not even clear to this Court what remedy

Plaintiffs would even have been entitled to in the first place if FCI were a "franchise

company" under the Act.  The remedies provision of the MFL provides:

> Any sales contract for a pyramid sales scheme made in violation of Section
> 75-24-53 is void and any person who, directly or through the use of agents
> or intermediaries, induces or causes another person to participate in a
> pyramid sales scheme will be subject to the remedy and proceedings
> authorized in Section 75-24-15.

> A franchisee suffering damage as a result of the failure to give notice as
> required of the cancellation or termination of a franchise, may institute legal
> proceedings under the provisions of Sections 75-24-51 through 75-24-61
> against the franchisor who canceled or terminated his franchise in the county
> in which the franchisor or his agent resides or can be located or where the
> franchisee resides. When the franchisee prevails in any such action he may
> be awarded a recovery of damages sustained to include loss of goodwill,
> costs of the suit, and any equitable relief that the court deems proper.

Miss. Code. § 75-24-57.  Nothing in this remedies provision would afford any relief to

Plaintiffs for the alleged actions of Defendants, further supporting the interpretation that

the MFL only applies to franchisors and the inherent baseless nature of Plaintiffs' claim.

For all of these reasons, the Motion to Dismiss the MFL claim should be granted.

---

[8]    The Mississippi franchise law defines of "person" to "include[] an individual,
corporation, trust, estate, partnership, unincorporated association, or any other legal or
commercial entity. . . ."  Miss. Code. § 75-24-51(b).

## IV.    RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that Defendants' Motion for Partial Dismissal Pursuant

to Rule 12(b)(6) (Dkt. 12) be **GRANTED** in part and **DENIED** in part as follows:

1.    Defendants' Motion for Partial Dismissal Pursuant to Rule 12(b)(6) (Dkt.

12) be **GRANTED** as to Plaintiffs' claims under the Minnesota Franchise Act and the

Mississippi Franchise Law, and that the claims be **DISMISSED WITHOUT**

**PREJUDICE**; and

2.    Defendants' Motion for Partial Dismissal Pursuant to Rule 12(b)(6) (Dkt.

12) be **DENIED** as to Plaintiffs' claim under the New York Franchise Sales Act.


DATED: December 19, 2019                    *s/ Elizabeth Cowan Wright*
                                            ELIZABETH COWAN WRIGHT
                                            United States Magistrate Judge



## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).